DONALD J. COOK, as Reno City Clerk, MARLENE HENDERSON, as Washoe County Registrar of Voters, and CHERYL LAU, as Nevada Secretary of State, Appellants, v. ALFRED J. MAHER, KIM M. QUINTANA, LARRY A. QUINTANA, JANYCE E. ROSSALL, THOMAS D. SCOGGIN, IDA A. SHAPIRO, RICHMAN L. TIDWELL and C. O. WATSON, Individuals, Respondents.

No. 23690

December 4, 1992                                    842 P.2d 729

*Frankie Sue Del Papa,* Attorney General and *Kateri Cavin,* Deputy Attorney General, Carson City; *Patricia A. Lynch,* Reno City Attorney and *William E. Isaeff,* Chief Deputy City Attorney, Reno; *Dorothy Nash Holmes,* District Attorney and *William A. Baker,* Deputy District Attorney, Reno, for Appellants.

*Kenneth McKenna,* Reno, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court granting a

petition for a writ of mandamus. The district court ordered appellants to verify signatures on petitions seeking to compel a recall election.[1]

On January 22, 1992, respondents, acting on behalf of a group called the Committee to Save Plumas Street, filed with the Reno City Clerk four notices of intent to seek recall of members of the Reno City Council. Respondents sought to recall council members Karen Bryan, Gus Nunez, Grant Sims, and Kathryn Wishart. Respondents submitted revised notices of intent to seek recall on January 28, 1992.

The city clerk thereafter informed respondents that at least 9,690 signatures, representing twenty-five percent of the 38,760 votes cast in the general election of November 6, 1990, would be required to trigger a recall election for each council member. *See* Nev. Const. art. 2, § 9 (number of registered voters required to trigger a recall election is not less than twenty-five percent of the number who actually voted in the municipality at the preceding general election).

On March 27, 1992, respondents submitted four recall petitions. On April 1, 1992, the registrar of voters advised the secretary of state that the petitions contained the following numbers of signatures: 8,105 for the recall of Bryan; 8,169 for the recall of Nunez; 8,391 for the recall of Sims; and 8,237 for the recall of Wishart.

On April 2, 1992, the secretary of state concluded that all four petitions had failed to reach the 9,690 signature requirement. The secretary of state therefore ordered that no further action be taken on the recall petitions.

Subsequently, respondents filed a petition for a writ of mandamus in the district court. Respondents asserted that they had submitted a sufficient number of signatures to require the holding of a recall election. The district court agreed and ordered the secretary of state to proceed with the recall petitions by verifying the signatures on the petitions. The district court concluded that instead of using the general election of November 6, 1990, as the controlling election, the secretary of state should have used the general city election of June 4, 1991. Under this reasoning, respondents would have been required to obtain only 6,974 signa-

---

[1]On October 20, 1992, this court issued an order staying enforcement of the order of the district court. On October 22, 1992, respondents filed a motion requesting this court to render an immediate decision in this case. Cause appearing, we grant this request. *See* NRAP 2. Although no briefs have yet been filed in this case, this court has received and reviewed the record on appeal. Disposition of this appeal turns upon our resolution of a single, purely legal issue. Additionally, the parties have adequately apprised this court of the uncontested facts and their respective legal contentions.

tures, which is twenty-five percent of the number of voters who cast ballots in the city election.

We conclude that the district court erred. The Nevada Constitution provides in part as follows:

> Every public officer in the State of Nevada is subject, as herein provided, to recall from office by the registered voters of the state, or of the county, district or municipality, from which he was elected. For this purpose *a number of registered voters not less than twenty-five percent (25%) of the number who actually voted in the state or in the county, district, or municipality electing said officer, at the preceding general election,* shall file their petition, in the manner herein provided, demanding his recall by the people . . . .

Nev. Const. art. 2, § 9 (emphasis added).

The district court construed the term "preceding general election" as meaning the general city election of June 4, 1991. This election was held pursuant to the Reno City Charter art. 5, § 5.010, which provides for a general city election to be held in June in odd-numbered years.

This approach violated the express terms of the Nevada Constitution. Our constitution expressly provides that "[t]he general election shall be held on the Tuesday next after the first Monday of November." Nev. Const. art. 15, § 5. Further, NRS 293.060 provides that the term "general election" means the election held pursuant to NRS 293.12755. NRS 293.12755 provides that a "general election must be held throughout the state on the 1st Tuesday after the 1st Monday of November in each even-numbered year." Thus, the term "general election" has been specifically defined by our constitution and by the legislature as the election held on the first Tuesday after the first Monday of November in even-numbered years.

The district court stated that while it recognized these dictates, it had to balance them with the inequity of allowing an elected official to benefit from the large number of votes cast in a general election in which the official was not elected. Nevertheless, the terms of our constitution and statutes do not allow a court to engage in balancing. The district court certainly had no discretion to substitute its judgment for the judgment of the people as expressed in our constitution. Accordingly, the secretary of state correctly used the general election of November 6, 1990, as the controlling election. We therefore reverse the order of the district court granting the petition for a writ of mandamus.[2]

---

[2]THE HONORABLE JOHN C. MOWBRAY, Chief Justice, did not participate in the decision of this appeal.